UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**TAMELA KEITH, an individual,**

        Plaintiff,

    **v.**

**CLATSKANIE PEOPLE'S UTILITY DISTRICT, a public body; GREGORY BOOTH, an individual,**

        Defendants.

Case No. 3:13-cv-01332-ST

**OPINION AND ORDER**

**STEWART, Magistrate Judge:**

Plaintiff, Tamela Keith, has filed a Motion to Compel defendant, Clatskanie People's Utility District ("CPUD"), to produce a report prepared in 2007 by an investigator concerning allegations made by CPUD employees regarding breaches by the CPUD's former General Manager, defendant Gregory Booth, of his duties and responsibilities. Asserting that the report is protected from disclosure by the attorney-client privilege, CPUD submitted it to the court for an *in camera* review. For the following reasons, plaintiff's motion is denied.

## STANDARDS

Plaintiff alleges employment discrimination claims under both federal and state laws for unlawful retaliation by Booth because she and three other female employees reported sexual harassment, resulting in her termination. "Where there are federal question claims and pendent state law claims present, the federal law of privilege applies." *Agster v. Maricopa Cnty.*, 422

1 – OPINION AND ORDER

F3d 836, 839 (9th Cir 2005) (citations omitted); FRE 501.  Although federal law controls, state law may still be considered when state actors are involved.  *See, e.g. Doubleday v. Ruh*, 149 FRD 601, 605 n3 (ED Cal 1993) ("However, the fact that federal law controls does not make a discussion of state law entirely irrelevant where state actors are involved . . . "); *Kelly v. City of San Jose*, 114 FRD 653, 656 (ND Cal 1987) ("None of this means, however, that federal courts should wholly ignore state laws, or rights recognized by state governments, when analyzing privilege issues in civil rights cases.").

"The attorney-client privilege protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice." *United States v. Richey*, 632 F3d 559, 566 (9th Cir 2011) (citation omitted).  The party asserting privilege has the burden of establishing the applicable privilege.  *Id*.  The attorney-client privilege exists where:

> (1) legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*Id* (brackets, quotations and citation omitted).

However, "because it impedes full and free disclosure of the truth, the attorney-client privilege is strictly construed." *United States v. Martin*, 278 F3d 988, 999 (9th Cir 2002) (quotations and citation omitted).  It is vital to the privilege "that the communication be made in confidence for the purpose of obtaining legal advice from the lawyer." *United States v. Gurtner*, 474 F2d 297, 298 (9th Cir 1973) (emphasis in original) (quotations and citation omitted).

## DISCUSSION

In 2007, after placing Booth on administrative leave, the CPUD Board of Directors hired Phillip Griffin, an attorney, to perform an independent investigation regarding the execution of Booth's duties and responsibilities.  O'Kasey Decl., Ex. 1, p. 1; Seidl Decl., Ex. A, p. 6.

Mr. Griffin's investigation was commissioned by the CPUD to aid Stacey Mark, its outside employment attorney, in her assessment of certain employment law issues. O'Kasey Decl., Ex. 1, p. 1. Booth then sued the CPUD for violating the public meetings law when it placed him on leave. Seidl Decl., Ex. A, p. 6.

After receiving a preliminary investigative report on March 16, 2007, the Board dismissed some allegations and told Mr. Griffin to proceed with others. Seidl Decl., Ex. A, p. 6. On April 16, 2007, Mr. Griffin delivered his final report to Ms. Mark who forwarded it to the Board and certain CPUD attorneys with a memorandum containing her analysis of the report. O'Kasey Decl., Ex. 1, pp. 1-2.

CPUD's general counsel notified each recipient that the report was privileged and confidential and was not to be disclosed to anyone. *Id*, p. 2. Further, CPUD's general counsel advised that each recipient should print only one copy of the report and delete it from their respective computers. *Id*. Thereafter, each recipient's printed copy was collected and placed in a file designated "Privileged and Confidential – Not for Public Disclosure." *Id*.

On April 17, 2007, the Board reinstated Booth and settled his lawsuit a couple of months later. Seidl Decl., p. 6.

On April 19, 2007, The Daily News of Longview, Washington ("The Daily News") submitted a public records request to the CPUD requesting a copy of the report and other documents. O'Kasey Decl., Ex. A, p. 3. When the CPUD denied that request, the Daily News filed a petition with the Office of the District Attorney for Columbia County, Oregon, requesting that it order the CPUD to disclose the report. *Id*. On June 29, 2007, the District Attorney issued an opinion latter denying the petition because the report was protected by Oregon's attorney-

3 – OPINION AND ORDER

client privilege.[1]  *Id*, pp. 5-6.  In March of 2008, an anonymous third party delivered the report to the Oregon Department of Justice ("DOJ").  *Id*, p. 3.  By letter dated March 12, 2008, the DOJ denied a request to disclose the report because it was protected by Oregon's attorney-client privilege.  *Id*, pp. 7-8.

Despite the CPUD's precautions, The Daily News obtained a copy of the report and accompanying memorandum from some third party.  *Id*, p. 1.  On November 18, 2008, the CPUD requested their return.  *Id*, pp. 1-4.  Rather than returning them, on April 9, 2009, after two Board members were recalled and Booth was reinstated and settled his lawsuit, The Daily News published an article about the contents of the report, as well as interviews with Booth and some Board members about the report.  Seidl Decl., Ex. A.

Plaintiff not only alleges claims based on unlawful retaliation by Booth, but also alleges a state law claim against the CPUD for negligent retention of Booth after being put on notice by the 2007 investigation of Booth's retaliatory and bullying behavior and abusive use of his position.  Booth's retaliatory conduct is also the subject of six lawsuits filed in this court, two of which have been settled.

The CPUD does not contest the relevance of the report, but contends that it is protected from disclosure by the attorney-client privilege.  It asserts that the report was prepared by Mr. Griffin, an attorney, for the purpose of facilitating legal advice by Ms. Mark, another attorney, to the CPUD Board.  In response, plaintiff asserts that the report was simply the result of a factual

---

[1] Oregon's attorney-client privilege provides as follows:
(2) A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client:
(a) Between the client or the client's representative and the client's lawyer or a representative of the lawyer;
(b) Between the client's lawyer and the lawyer's representative;
(c) By the client or the client's lawyer to a lawyer representing another in a matter of common interest;
(d) Between representatives of the client or between the client and a representative of the client; or
(e) Between lawyers representing the client.
ORS 40.225 (OEC Rule 503).

4 – OPINION AND ORDER

investigation by Mr. Griffin who did not give any legal advice or assistance to the interviewees or the CPUD, and also notes that none of the interviewees sought legal advice from him or the CPUD.

Plaintiff's position finds some support in *Smith v. Coulombe*, No. 2:11-cv-531-SU, 2013 WL 428363 (D Or Feb. 4, 2013), which held that the report by an independent investigator in response to a tort claim notice regarding the behavior of plaintiff, a police officer, was not protected by the attorney-client privilege. Judge Simon reached that conclusion based on the following facts:

> Stoelk is not an attorney, neither his interviews nor his reports provided legal advice, the interviews were not confidential such that the attorney-client privilege could attach because third parties were allowed to attend the interviews, the interviewees were not "clients" of Stoelk, nor of the Hermiston City Attorney for whom Stoelk was acting as an agent, and the interviewees were not seeking legal advice from Stoelk or from the City Attorney.

*Id* at *4.

In contrast, Mr. Griffin was an attorney hired by and working for the CPUD, his client; his report was provided to Ms. Mark in order for her to provide legal advice to the CPUD; his interviews were intended to be confidential; and the interviewees included employees of the CPUD. Nonetheless, plaintiff argues that, as in *Smith*, the attorney-client privilege does not apply because Mr. Griffin was engaged only in fact-finding, rather than the rendering of legal advice or assistance.

This court's *in camera* review confirms that Mr. Griffin only gathered factual evidence and did not make any legal determination whether the Board should retain Booth. However, that distinction has been rejected by the Ninth Circuit. Rather than "continue to distinguish between fact-finding and lawyering," as do some commentators, the Ninth Circuit held that the Supreme Court "did not eliminate this distinction," but made "clear that fact-finding which pertains to

5 – OPINION AND ORDER

legal advice counts as 'professional legal services.'" *United States v. Rowe*, 96 F3d 1294, 1297 (9th Cir 1996), citing in *Upjohn Co. v. United States*, 449 US 383 (1981). As observed by the Supreme Court, "the privilege exists to protect not only the giving of professional advice to those who act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *Id*, quoting *Upjohn*, 449 US at 391. Accordingly, following *Upjohn*, the Ninth Circuit and other circuits hold that the attorney-client privilege includes a factual investigation by an attorney in connection with the provision of legal services to a client. *See, e.g., Sandra T.E. v. South Berwyn Sch. Dist. 100*, 600 F3d 612, 620 (7th Cir 2010) (the attorney's investigation "of the factual circumstances surrounding the [sexual] abuse was an integral part of the package of legal services for which it was hired and a necessary prerequisite to the provision of legal advice about how the District should respond."); *In re Allen*, 106 F3d 582, 603 (4th Cir 1997) ("The relevant question is not whether [the attorney] was retained to conduct an investigation, but rather, whether this investigation was related to the rendition of legal services." (internal quotation marks omitted)).[2] Similarly here, Mr. Griffin performed a factual investigation in connection with Ms. Mark's provision of legal services to her client, the CPUD. Therefore, the report does fall within the scope of the attorney-client privilege.

Nonetheless, plaintiff asserts that the CPUD waived any attorney-client privilege by publicly disputing the accuracy of the report. The Daily News article reported the following statements by the CPUD:

---

[2] To the extent it is relevant, Oregon law regarding its attorney-client privilege reaches the same conclusion. *Klamath Cnty. Sch. Dist. v. Teamey*, 207 Or App 250, 260, 140 P3d 1152, 1158 (2006) (holding that a report by a private investigator hired to assist an attorney to render legal assistance to the school district regarding wrongdoing by district employees was an attorney-client communication and exempt from public disclosure); *State ex rel. OHSU v. Haas*, 325 Or 492, 501-02, 942 P2d 261, 266 (1997) ("A lawyer who conducts who conducts an internal investigation concerning a client's potential legal liability, provides the client with a written report on the results of that investigation, and advises the client on ways to resolve problems uncovered in the investigation renders professional legal services to the client.").

6 – OPINION AND ORDER

> The board, in statements to The Daily News, backs Booth. It calls allegations in the report "either unsubstantiated or outright false" and says the investigation was "clearly motivated by the new Board President's personal dislike of the General Manager." * * *
>
> "What is unfortunately lost amongst these events is the fact that the performance of the General Manager, and CPUD as a whole, has been exemplary," the board wrote. * * *
>
> "The Board decided to allow Mr. Griffin to complete the report solely to avoid any appearance that matters alleged in the report were not fully investigated," the board wrote in February.

Seidl Decl., Ex. A, pp. 1, 2, 4.

In addition to these statements, the article is replete with denials and justifications made by Booth. Plaintiff contends that as the CPUD's General Manager, his statements are attributable to the CPUD.

However, these statements to the media are only a partial waiver of the privilege "as to the information actually disclosed," and not to the rest of the privileged information. *Sullivan v. Warminster Tp.*, 274 FRD 147, 153-54 (ED Pa 2011) (Chief of Police disclosure to media that report found police shooting was justified did not waive privilege for entire report), citing *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F2d 1414, 1426 n12 (3rd Cir 1991). "When a party discloses a portion of otherwise privileged materials while withholding the rest, the privilege is waived only as to those communications actually disclosed, unless a partial waiver would be unfair to the party's adversary." *Westinghouse*, 951 F2d at 1426 n12 (citation omitted). *Also see, e.g., Meyer v. Colavita, USA, Inc.*, No. SACV 11-00696-AG (MLGx), 2011 WL 2457681, at *4-5 (CD Cal June 17, 2011) (reference to exhaustive laboratory tests and their inconclusive results in court filing, oral statement to court, and statement to press were insufficient to waive privilege for the tests). The limited information disclosed to The Daily

7 – OPINION AND ORDER

News by the CPUD and Booth did not constitute a waiver as to the report itself. They reveal nothing more than a disagreement with the report.

Plaintiff also argues that the CPUD has waived the privilege by alleging an affirmative defense based on the *Ellerth / Faragher* doctrine[3] which places its investigative policies and procedures at issue. Plaintiff asserts that she may cite the report's investigation of complaints by other employees in 2007, and the aftermath of that investigation, to support her concerns and fear about the CPUD's ability to independently and fairly investigate her later complaints about Booth. However, this affirmative defense is based on what steps the CPUD took to investigate and remedy plaintiff's complaints, not its prior investigation of any other employee's complaints. Therefore, the CPUD has not waived the attorney-client privilege with respect to the report by raising the *Ellerth / Faragher* defense.

## ORDER

For the foregoing reasons, plaintiff's Motion to Compel (docket #15) is DENIED.

DATED June 18, 2014.

                                                            s/ Janice M. Stewart
                                                            Janice M. Stewart
                                                            United States Magistrate Judge

---

[3] The *Ellerth / Faragher* doctrine based on *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998) and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998), "is premised on the principle that an employer may escape liability for harassment by certain of its employees when it undertakes appropriate steps to remedy the situation." *Swinton v. Potomac Corp.*, 270 F3d 794, 802 (9th Cir 2001).